IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KIRKLAND LAMONT BRYANT III,<br><br>Plaintiff,<br><br>v.<br><br>KELLY L. STEPHENS, CLERK OF COURT, U.S. COURT OF APPEALS FOR THE SIXTH CIRCUIT,<br><br>Defendant. | CASE NO.: 4:26cv589<br><br>JUDGE J. PHILLIP CALABRESE<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |

## I. INTRODUCTION

Plaintiff, Kirkland L. Bryant, III (hereinafter "Bryant") filed this lawsuit pro se against Kelly L. Stephens, Clerk of Court for the United States Court of Appeals for the Sixth Circuit, alleging a claim pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Bryant alleges Stephens violated his Fifth Amendment Due Process rights. Bryant prays for monetary damages, a declaration that the Clerk of Court violated his constitutional rights, injunctive relief correcting the appellate decision, and mandamus relief compelling proper docketing and processing of his 'complaint.' (Dkt. 1, Compl., PageID # 5-6.)

## II. FACTS

Bryant was indicted for narcotic related offenses in the matter of *United States v. Bryant,* United States District Court Case No. 5:20-CR-00694 (N.D. Ohio Oct. 20, 2020). On July 22, 2021, Bryant pled guilty to counts one through eight of the indictment. (Crim. Dkt. 44.) On July 28, 2022, the court referred Bryant for a competency evaluation. (Crim. Dkt. 94.) On November 9, 2022, the court adopted the report and finding that Bryant was competent to proceed for sentencing. (Crim. Dkt. 96.) The court sentenced Bryant to a term of incarceration of 185 months.

(*Id.*) Bryant filed a Notice of Appeal. *See United States v. Bryant,* Case No. 22-3969 (6th Cir. Nov. 17, 2022) ("*Bryant I*").

Bryant, with the assistance of counsel, filed his opening brief raising the following arguments: 1) denial of the benefit of counsel during the competency hearing; 2) violation of Bryant's Sixth Amendment right to counsel by allowing Bryant to proceed pro se and by conducting an inadequate *Faretta* inquiry; 3) the district court erred in denying Bryant's counsel's motion to withdraw; and 4) the reasonableness of the imposed sentence. (*Bryant I,* Dkt. 29, Appellant's Br.) The United States conceded error based on the record stating, "[I]t [is] unclear from the competency hearing transcript whether … Bryant's trial counsel performed in a constitutionally effective manner by providing "meaningful adversarial testing" of Bryant's competency . . ." (*Id.*, Dkt. 36.) The United States moved the court to remand the matter to the district court for further proceedings and hold the briefing schedule in abeyance pending a ruling on the motion. (*Id.*) The court granted the United States' motion and remanded the matter to the district court on June 24, 2024. (*Id.*, Dkt. 38, Order.)

On remand, Bryant was appointed counsel (Crim. Dkt. 125) and a second competency evaluation was ordered. (Crim. Dkt. 129.) On February 13, 2025, the court conducted a hearing on Bryant's competency to be sentenced and held he was competent at the time of sentencing, November 9, 2022. (Crim. Dkt. 135.) On March 13, 2025, Bryant, acting pro se, filed in district court a "Motion to Appeal District Court Order for Failure to Assert Correct Judgement, leaving the Issue of Mr. Kirland Bryant's first Council's [sic] Ifective [sic] Assistants [sic]." (Crim. Dkt. 140.)

Bryant's "Motion to Appeal" was docketed by the Sixth Circuit Court of Appeals Clerk's Office as a new appeal and assigned a new case number, *United States v. Kirkland Bryant, III,*

Sixth Circuit Case No. 25-3201 ("*Bryant II*"); and a briefing schedule was set. (*See Bryant II*, Dkt. 1, Mar. 21, 2025 Letter from Case Manager; Dkt. 3, Briefing Schedule.) According to Plaintiff, his case was not docketed as a direct appeal but was docketed as an appeal seeking post-conviction relief (Dkt. 1, Compl., PageID # 2), and as a result of the docketing designation, he was not provided a copy of the transcript or appointed counsel. (*Id.*) On or about April 10, 2025, Plaintiff filed appellant's merit brief and the United States filed appellee's brief on or about June 23, 2025. (*Bryant II*, Dkt. 6, Appellant's Merit Br., Dkt. 11, Appellee's Merit Br.) Through internal audit controls the Sixth Circuit Clerk of Court discovered the error and on September 30, 2025, the Clerk of Court entered an order, acknowledging that when the appeal was opened it was incorrectly designated as a criminal post-conviction appeal and counsel was not appointed. (*Bryant II*, Dkt. 12, Order.) The order further stated that the proper designation was a direct criminal appeal and counsel would promptly be appointed to represent Bryant. (*Id.*) The parties' previously filed briefs were locked (*id.*) and the briefing schedule was reset.

In *Bryant II*, counsel for Bryant entered an appearance on October 15, 2025, and ordered the transcript on October 16, 2025. (*Id.*, Dkt. 15 & 16.) Prior to the date that Bryant's brief was due, Bryant, acting pro se, filed a "motion to [terminate] his appointed counsel" (*Id.*, Dkt. 23), and counsel subsequently filed a motion to withdraw as counsel. (*Id.*, Dkt. 25.) The briefing schedule was held in abeyance pending a ruling on the motion to withdraw. On February 2, 2026, counsel's motion to withdraw was granted (*id.*, Dkt. 28) and on March 2, 2026, Bryant was appointed new counsel. (*Id.*, Dkt. 31.) On April 7, 2026, Bryant's merit brief was docketed.

Bryant claims his cause of action arises under the United States Constitution, "Fifth Amendment – Due Process" and "Equal Protection/Access to Courts." (Dkt. 1, Compl., PageID #1.)

## III. LAW AND ARGUMENT

### A. Fed. R. Civ. P. 12(b)(6).

A court will grant a motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), if the court finds a plaintiff can prove no set of facts in support of their claims that entitles them to relief. *Leech v. DeWeese*, 689 F.3d 538, 541 (6th Cir. 2012) (quoting *Cooey v. Strickland*, 479 F.3d 412, 415 (6th Cir. 2007)). When reviewing a motion to dismiss for failure to state a claim, the court must "accept the plaintiff's factual allegations as true, and . . . view the complaint in the light most favorable to the plaintiff, but . . . [is] 'not required to accept legal conclusions or unwarranted factual inferences as true.'" *Crosby v. Univ. of Ky.*, 863 F.3d 545, 551-552 (6th Cir. 2017), *cert. denied*, 138 S.Ct. 741 (2018) (quoting *Moody v. Mich. Gaming Control Bd.*, 847 F.3d 399, 402 (6th Cir. 2017). Further, a plaintiff must allege enough facts to allow the court to determine a plausible claim for relief. *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). The plausibility standard requires enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A pro se plaintiff is not exempt from complying with minimum pleading standards. Principles requiring generous construction of pro se pleadings are not without limits. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements. *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988), *abrogated on other grounds, Buckhannon Bd. & Care Home, Inc. v.*

*W.Va. Dep't of Health & Human Res.,* 532 U.S. 598 (2001), *as recognized in, Mosholder v. Lowe's Co*., No. 5:18-CV-1325, 2019 WL 1116009 (N.D. Ohio Mar. 11, 2019). District courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments. *Beaudett*, 775 F.2d at 1278. To do so would "require[] . . . [the court] to explore exhaustively all potential claims of a *pro se* plaintiff, . . . [and] would . . . transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.*

B. Bryant fails to state a cognizable *Bivens* claim against Stephens.

In *Bivens*, the Supreme Court "'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" *Iqbal*, 556 U.S. at 675 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)). *Bivens* held that, despite the absence of a statutory cause of action, law enforcement officials acting under color of federal law could be sued for money damages for using excessive force in conducting a warrantless search and arrest in violation of the Fourth Amendment. *Bivens*, 403 U.S. at 389. The Supreme Court created an implied damages remedy under the Constitution only two other times: in *Davis v. Passman*, 442 U.S. 228, 234-35 (1979), for an equal-protection violation involving discrimination in congressional-staff employment, and in *Carlson v. Green,* 446 U.S. 14, 19 (1980), for an Eighth Amendment medical deliberate indifference claim where prison staff failed to treat a known medical condition resulting in an inmate's death. *See Ziglar v. Abbasi*, 582 U.S. 120, 130-31 (2017).

The Supreme Court's recent decision in *Ziglar*, makes clear that the continued expansion of *Bivens* to "'any new context or new category of defendants'" beyond *Bivens*, *Davis*, and *Carlson* is a "'disfavored' judicial activity." *Id.* at 135 (quoting *Malesko*, 534 U.S. at 68, and then quoting *Iqbal*, 556 U.S. at 675). For nearly four decades now, the Supreme Court has "consistently refused

to extend *Bivens* liability" to any new contexts. *Malesko*, 534 U.S. at 68; *see Abbasi*, 582 U.S. at 135 (listing cases).

Thus, the Supreme Court "made clear that, in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts[.]" *Egbert v. Boules*, 596 U.S. 482, 486 (2022); *see also id.* at 491 ("At bottom, creating a cause of action is a legislative endeavor."). The "antecedent" question in every *Bivens* case is whether a court should accept a plaintiff's invitation to craft a cause of action in the absence of affirmative Congressional authorization. *Hernandez v. Mesa*, 582 U.S. 548, 553 (2017). Courts have a "concomitant responsibility" to address this issue and "evaluate any grounds that counsel against *Bivens* relief." *Egbert*, 596 U.S. at 497, n.3. When asked to imply a remedy, "'the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?'" *Id.* at 492 (quoting *Hernandez v. Mesa ("Hernandez II")*, 589 U.S. 93, 114 (2020)). "If there is a rational reason to think that the answer is 'Congress'—as it will be in most every case—no *Bivens* action may lie." *Id.* (citing *Abassi*, 582 U.S. at 135-36).

The Supreme Court has directed courts to address a two-part inquiry in deciding whether to imply a *Bivens* remedy. First, a court is required to ask whether the claim arises in a "new context" different from the three "instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 582 U.S. at 131. Measured against those three cases, a claim may present a new *Bivens* context based on distinctions including, but not limited to:

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 140. Even small differences constitute a new context, as "a modest extension is still an

extension." *Id.* at 147. Only when a court "find[s] that a claim arises in a new context" does it "proceed to the second step . . . ." *Hernandez II*, 589 U.S. at 102.

Second, the court is to consider whether there are any alternative remedies to a damages suit, or whether any other "'special factors counsel[] hesitation'" in creating a new damages remedy in that context. *Abbasi,* 582 U.S. at 165 (citing *Carlson*, 446 U.S. at 18). This "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 136. "[T]o be a 'special factor,'" a circumstance need only "cause a court to hesitate before answering that question in the affirmative." *Id.* A *Bivens* remedy should not be inferred if "there [is even one] sound reason[] to think Congress *might* doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong. . . ." *Id.* at 137 (emphasis added). Relatedly, "if there is an alternative remedial structure present in a certain case," the existence of that existing process "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.*

In *Egbert*, 596 U.S. at 492*,* the Court affirmed the analytical framework announced in *Abbasi*, clarifying that the two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." "If there is even a single reason to pause before applying *Bivens*, in a new context, a court may not recognize a *Bivens* remedy." *Id.* (quotation marks omitted). In asking whether special factors counsel hesitation, the court gives important weight to "'separation-of-power principles'" and "consider[s] the risk of interfering with the authority of other branches." *Hernandez II*, 589 U.S. at 102 (quoting *Abbasi*, 582 U.S. at 135). A reason to defer to Congress will be present "in most every case." *Egbert*, 596 U.S. at 492 (citation omitted).

Bryant's *Bivens* claim against Stephens arises in a new context. Bryant's claim does not fit within the confines of the three contexts where the Supreme Court has recognized an implied damages remedy. Bryant has not alleged a Fourth Amendment violation by a law enforcement officer as was the case in *Bivens.* Likewise, Bryant has not alleged deliberate indifference to a medical need pursuant to the Eighth Amendment, therefore, his claim is not similar to the claims in *Carlson*. Finally, he does not allege an equal protection claim similar to the context addressed in *Davis* – equal-protection claim involving discrimination in congressional-staff employment.

The Supreme Court has not recognized a *Bivens* remedy in the context of the undefined claims asserted by Bryant – Fifth Amendment due process claim, and equal protection claim for denial of access to courts, a right that is guaranteed by the First Amendment. (Dkt. 1, Compl., PageID # 1, 4.) Bryant does not clearly articulate his Fifth Amendment due process claim, but it appears he is claiming a violation of due process because of a perceived First Amendment violation. (*Id.*, PageID # 4, "[T]he Clerk denied Mr. Bryant the right to access the Courts as a result of her ministerial act.") The right to access to the court is rooted in the First Amendment, not the Fifth Amendment. The Supreme Court has held that there is no *Bivens* remedy for First Amendment claims. *Egbert,* 596 U.S. at 498-99; *Iqbal,* 556 U.S. at 675.

The Supreme Court has explained that "a case may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez II*, 589 U.S. at 103. Bryant's purported due process claim is different from the Fifth Amendment equal protection claim recognized by the Supreme Court in *Davis*. *See Enriquez-Perdomo v. Newman*, 149 F.4th 623, 640 (6th Cir. 2025) ("[A] Fifth Amendment *due process* claim is clearly a materially different context from a Fifth Amendment *equal protection* claim.") (emphasis in original) (citing *Mays v. Smith*, 70 F.4th 198,

203 (4th Cir. 2023) (holding that a procedural due process claim under the Fifth Amendment is a new context for *Bivens* purposes); *Goldberg v. Ortiz*, No. 22-1954, 2023 WL 8064810, at *1 (3d Cir. Nov. 21, 2023)). Bryant's constitutional claims arise in a new context that is materially different from *Bivens*, *Carlson*, and *Davis,* therefore, he cannot state a cognizable constitutional claim against Stephens in her individual capacity. Stephens respectfully moves the Court to dismiss Bryant's *Bivens* claim for failure to state a claim upon which relief may be granted.

C. Even if Bryant could state a cognizable *Bivens* claim, Stephens is entitled to Absolute Immunity.

Assuming for purpose of this motion, without conceding the issue, that Kelly personally docketed Bryant's appeal and incorrectly designated the appeal, as the clerk of court performing a task [docketing] that is an integral part of the judicial process, Stephens is entitled to absolute quasi-judicial immunity. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Bradley v. United States,* 84 F. App'x 492, 493 (6th Cir. 2003); *Foster v. Walsh*, 864 F.2d 416, 417-18 (6th Cir. 1988); *Christensen v. Wiseman*, No. 1:11CV1837, 2011 WL 4376099, at *8-9 (N.D. Ohio Sept. 20, 2011).

In *Mireles,* the Supreme Court stated: "'[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in [her], shall be free to act upon [her] own convictions, without apprehension of personal consequences to [her]self.'" *Mireles*, 502 U.S. 9 (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1871)). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Id.* at 11. This immunity extends to court personnel performing tasks that are an integral part of the judicial process. *Foster,* 864 F.2d at 417; *Christensen*, 2011 WL 4376099, at *8-9 (the clerk's acceptance of documents for filing is an integral part of the judicial process and within the subject matter jurisdiction of the court); *Bradley*, 84 F. App'x 492-93 (Judicial officers, including clerk of court, who allegedly delayed processing

plaintiff's petition for a writ of habeas corpus were acting in their judicial and quasi-judicial capacity, and therefore, immune from suit.).

In *Christensen*, the court stated:

> Whether an act is judicial in character does not depend on whether it is discretionary. [*Foster,* 864 F.2d at 417]. Rather, immunity applies to all acts of auxiliary court personnel that are "basic and integral parts of the judicial function," unless those acts are done in the clear absence of all subject matter jurisdiction of the court. *Mullis v. U.S. Bankruptcy Court, Dist. of Nevada,* 828 F.2d 1385, 1390 (9th Cir.1987). Acts committed in error or in excess of jurisdiction will not forfeit immunity, even if it results in "grave procedural errors." *Id.*

2011 WL 4376099, at *8. *See also Harris v. Suter*, 3 F. App'x 365, 366 (6th Cir. 2001) ("When a clerk files or refuses to file a document with the court, he is entitled to immunity, provided the acts complained of are within the clerk's jurisdiction."); *Hall v. U.S. Off. of Gen. Couns. Admin. Off. of U.S. Cts.,* No. 5:24CV1204, 2024 WL 3455058, at *3 & n.1 (N.D. Ohio July 18, 2024) ("The review and processing of Petitions is an integral part of the judicial process and within the subject matter jurisdiction of the United States Supreme Court.") (citing *Sindram v. Suda*, 986 F.2d 1459, 1461 (D.C. Cir. 1993); *Fish v. Murphy*, No. 01-3601, 2001WL 1355611(6th Cir. Oct. 26, 2001) (clerk of court was entitled to absolute immunity even though he stamped the wrong date on the document which resulted in the dismissal of an appeal)).

Here, assuming, arguendo, that Stephens was responsible for designating the appeal as a post-conviction appeal when it was docketed, the act of reviewing and docketing appeals is a basic part of the judicial function and well within the subject matter of the clerk of court for the Sixth Circuit Court of Appeals. Bryant acknowledges that "Stephens is the Clerk of Court for the United States Court of Appeals for the Sixth Circuit;" she was "acting under federal authority in performing docketing and appellate classification functions;" and that these functions are "part of the Federal Judicial Process." (Dkt. 1, Compl., PageID # 2.) Stephens was performing a quasi-

judicial act that was within her functions as the Clerk of Court for the United States Court of Appeals for the Sixth Circuit; therefore, she is entitled to absolute quasi-judicial immunity.

D. Byant's prayer for equitable relief must be dismissed.

Plaintiff is proceeding *pro se*, therefore his pleadings are entitled to "a less stringent standard than those drafted by lawyers and are liberally construed." *Tesley v. Martin*, Case No. 18-1158, 2019 WL 11003420, at *3 (6th Cir. Apr. 1, 2019) (citing *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). However, *pro se* plaintiffs must comply with the Federal Rules of Civil Procedure, including satisfying Rule 12(b)(6). *Id*. (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Courts may dismiss a complaint that consists of only legal conclusions because there is no mandate that courts "conjure up unpleaded facts to support conclusory allegations," despite the less stringent standard. *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) and quoting *Kamppi v. Ghee,* 208 F.3d 213 (Table), 2000 WL 303018, at *2 (6th Cir. 2000)). Moreover, "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading.'" *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.,* 518 F.2d 1167, 1169 (6th Cir. 1975)).

Even liberally construed, Bryant's Complaint fails to state a plausible claim for equitable relief. Bryant prays for injunctive relief "ordering correction of the appellate decision" and for a writ of mandamus "compelling proper docketing and processing of Plaintiff's complaint."[1] (Dkt. 1, Compl., PageID # 6.) The complaint fails to sufficiently plead a claim for equitable relief in the form of mandamus or injunctive relief as required by Fed. R. Civ. P. 8. The complaint does not

[1] Although Bryant requests equitable relief in the form of an injunction, he fails to state an act that he seeks to enjoin. (*See* Dkt. 1, Compl., PageID # 5.)

allege a waiver of sovereign immunity, does not allege irreparable harm, and lacks factual support to advance such a claim. Other than mentioning equitable relief in his prayer, Bryant's complaint merely sets forth past alleged harm, not current or imminent future harm. (Dkt. 1, Compl., PageID # 2.) Bryant claim for equitable relief must be dismissed for failure to state a claim upon which relief may be granted.

Moreover, to the extent this Court interprets Bryant's complaint to state a claim for equitable relief said claim is now moot. "When there no longer exists a case or controversy, or if Plaintiff is unable to benefit from the mandamus relief requested, the case is moot and the Court lacks jurisdiction." *Banks v. U.S. Postal Insp. Serv.*, No. 4:18CV00596, 2018 WL 4184740, at *6 (N.D. Ohio Aug. 31, 2018) (citing *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). The Court lacks subject matter jurisdiction because Bryant cannot demonstrate a live case or controversary.

Because the relief requested was provided prior to the commencement of this action, the granting of equitable relief would be a vain act. The appellate court docket was corrected to reflect a direct appeal; Bryant was provided with a copy of the transcript of the district court proceedings; he was appointed counsel; and counsel has filed an appellate brief on his behalf. (*Bryant II*, Sixth Circuit Case No. 25-3201, Dkt. 12, 14, 16, 31, 37.) Bryant's case is now in the same posture it would have occupied but for the docketing error. The status quo has been restored and equitable relief is not warranted because the matter is moot. *See Gotion, Inc. v. Green Charter Twp.*, No. 24-1783, 2026 WL 527020, at *4 (6th Cir. Feb. 25, 2026) (citing *Ohio v. EPA*, 969 F.3d 306, 310 (6th Cir. 2004) (noting that to avoid a finding of mootness, challenged "conduct must be 'reasonably' likely to recur[,] mean[ing] that there must be a fair prospect that the conduct will recur in the foreseeable future").); *Hussein v. Beecroft*, 782 F. App'x 437, 442 (6th Cir. Aug. 2, 2019) (plaintiffs' mandamus claim became moot once the government completed the action sought in

plaintiffs' petition). Stephens respectfully moves the Court to dismiss any purported claim for equitable relief.

IV. CONCLUSION

Defendant Kelly L. Stephens, United States Court of Appeals for the Sixth Circuit Clerk of Court, respectfully moves this Honorable Court for an Order dismissing Plaintiff's Complaint with prejudice for the reasons stated herein.

Respectfully submitted,

DAVID M. TOEPFER
United States Attorney
Northern District of Ohio

By: s/ Renée A. Bacchus
Renée A. Bacchus (OH 0063676)
Assistant U.S. Attorney
U.S. Attorney's Office
801 W. Superior Avenue, S. 400
Cleveland, OH 44113
(216) 622-3707 – phone
(216) 522-4982 – fax
Renee.bacchus@usdoj.gov

*Attorney for Defendant Kelly L. Stephens*

**PAGE LIMIT CERTIFICATION**

I hereby certify that the foregoing Memorandum in Support is thirteen (13) pages and complies with Loc. R. 7.1 for a matter not assigned to a specific track.

/s/ Renée A. Bacchus
Renée A. Bacchus
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

The forgoing *Motion to Dismiss and Memorandum in Support*, was filed electronically on May 28, 2026, and a copy will be served upon all parties of record via the Court's electronic docketing system. A true and accurate copy was sent via regular U.S. Mail, postage pre-paid, on May 28, 2026, to:

Kirland L. Bryant, III
Inmate No. 15642-509
Northeast Ohio Correctional Center
2240 Hubbard Road
Youngstown, OH 44505

/s/ Renée A. Bacchus
Renée A. Bacchus
Assistant U.S. Attorney